**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| YOUSOF RAHIMIAN, | |
| Plaintiff, | |
| v. | Civil Action No. 22-785 (BAH) |
| ANTONY J. BLINKEN, *in his official capacity as Secretary of State, et al.*, | Chief Judge Beryl A. Howell |
| Defendants. | |

## MEMORANDUM OPINION

Plaintiff Yousof Rahimian, a U.S. citizen, seeks to compel defendants—various federal officials in their official capacities—to adjudicate his wife's visa application, which has been pending without decision for over three years.  Amended Compl. ("Am. Compl.") ¶ 14, ECF No. 2.  Plaintiff claims defendants have unreasonably delayed the visa application in violation of the Administrative Procedure Act ("APA"), *id.* ¶ 14–29, and the Mandamus Act, *id.* ¶ 30–34, and have done so intentionally by applying the policies of the Controlled Application Review and Resolution Program ("CARRP") to their review of the visa application, *id.* ¶ 35–39, in violation of the Immigration and National Act ("INA"), 8 U.S.C. § 1101 *et seq.*, Article 1, Section 8, Clause 4 of the U.S. Constitution, the Fifth Amendment of the U.S. Constitution, and the APA, *id.* ¶ 40.  Defendants have moved to dismiss this case for lack of jurisdiction, under Federal Rule of Civil Procedure 12(b)(1), or, in the alternative, for failure to state a claim under Rule 12(b)(6).  Defs.' Mot. Dismiss & Mem. Supp. Mot. Dismiss ("Defs.' Mot.") at 1, ECF No. 8.  For the reasons set forth below, defendants' motion to dismiss is granted.

## I.      BACKGROUND

Following a brief review of the statutory and regulatory background, the factual history underlying the claims and procedural history of this case are summarized below.

### A.    Statutory and Regulatory Background

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, authorizes the issuance of visas to different categories of immigrants, including relatives of U.S. citizens.  8 U.S.C. § 1154; 8 C.F.R. § 204.1(a)(1), (b).  A U.S. citizen seeking to obtain lawful permanent resident status for an immediate relative, including a spouse, must file a Form I-130, Petition for Alien Relative, with U.S. Customs and Immigration Services ("USCIS").  8 U.S.C. §§ 1154, 1151(b)(2)(A)(i) (defining a spouse as an "immediate relative" of a citizen for the purposes of Form I-130 petitioners); 8 C.F.R. § 204.1(a)(1).  If USCIS approves the petition, the case is forwarded to the National Visa Center ("NVC"), which is the U.S. Department of State ("State Department") visa application processing center.  *Id.* § 204.2(a)(3).  The foreign spouse must then submit additional paperwork and fees to NVC.  *See* 22 C.F.R. § 42.67 (outlining application fees and additional documentation that an applicant must submit to NVC to complete the application, including an oath and a signature on Forms DS-230 and 260, a "[f]orm of attestation for certain repeat applications due to COVID-19," registration requirements, and fingerprints).  After processing the requisite materials, NVC schedules an interview for the applicant with a consular officer at the embassy with jurisdiction over the applicant's residence.  *Id.* § 42.62.  Following the interview, the consular officer must either issue or refuse the visa.  *Id.* § 42.81(a).

### B.    Factual Background

In February 2018, plaintiff filed an I-130 visa petition on his wife's behalf with USCIS, hoping to have her join him in the United States as a lawful permanent resident.  Am. Compl. ¶¶ 1, 14.  USCIS approved plaintiff's petition on July 24, 2019, and forwarded the application to

NVC on November 6, 2019, *id.* (showing plaintiff's USCIS receipt number); *Case Status Online*, U.S. Citizenship & Immigration Servs., https://egov.uscis.gov/casestatus/landing.do (last visited on Jan. 9, 2023) (showing plaintiff's USCIS case status, based on the provided receipt number, as "Case Was Approved"), and plaintiff has paid all the requisite fees, Am. Compl. ¶¶ 25, 31. Unfortunately, and very frustrating to plaintiff and his spouse, the application has yet to be adjudicated. *Id.* ¶ 1. The next step in the process is for plaintiff's wife to attend a consular interview in Turkey, where she currently resides, so that her visa application can be finally adjudicated. 22 C.F.R. § 42.62; *see* Am. Compl. ¶ 1 (identifying plaintiff's State Department application number); *Visa Status Check*, U.S. DEP'T OF STATE,

https://ceac.state.gov/CEACStatTracker/Status.aspx (last visited on Jan. 9, 2023) (showing plaintiff's case status, based on the provided application number, as "At NVC").

In March 2020, the State Department temporarily suspended visa services at all U.S. embassies and consulates, including the embassy in Turkey, due to the onset of the COVID-19 pandemic. *Suspension of Routine Visa Services*, U.S. DEP'T OF STATE,

https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/visas-news-archive/suspension-of-routine-visa-services.html (July 22, 2020).[1] In July 2020, the State Department authorized a phased resumption of visa services. *Id.* Subsequently, in November 2021, the State Department returned broad discretion to embassies and consulates in determining how to prioritize appointments as safely as possible in all visa categories. *Visa Services Operating Status Update*, U.S. DEP'T OF STATE,

https://travel.state.gov/content/travel/en/News/visas-news/visa-services-operating-status-update.html (Nov. 19, 2021).

---

[1]     The Court may take judicial notice of information posted on official public websites of government agencies. *See Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013).

Despite efforts to resume pre-pandemic processing capabilities, many embassies and consulates face a substantial backlog of immigrant visa applications.  *See National Visa Center (NVC) Immigrant Visa Backlog Report*, U.S. DEP'T OF STATE,

https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/visas-backlog.html

(last visited Jan. 9, 2023); *see also* Briefing, Julie M. Stufft, Acting Deputy Assistant Secretary, Bureau of Consular Affairs, U.S. DEP'T OF STATE, Update on U.S. Immigrant Visa Processing at Embassies and Consulates (Mar. 9, 2021), https://www.state.gov/briefings-foreign-press-centers/update-on-u-s-immigrant-visa-processing-at-embassies-and-consulates/.  This backlog has caused increased wait times for individual applicants awaiting an appointment date from NVC.  *Id*.  According to the State Department's website, the U.S. Embassy in Ankara, Turkey, much like other embassies around the world, is experiencing a substantial pandemic-related backlog in every visa category, resulting in significant delays in the scheduling of consular interviews.  *See Immigrant Visas*, U.S. Embassy in Turkey,

https://tr.usembassy.gov/visas/immigrant-visas/ (last visited Jan. 9, 2023).  Nonetheless, the State Department has publicly committed "to resolve backlogs and process visas as quickly and efficiently as [it] can" while also ensuring that the "health and safety of [its] personnel and [its] clients coming into [the] consular sections abroad" remain "the department's highest priority during the pandemic."  Briefing, Julie Stufft.

Despite plaintiff's repeated attempts to contact NVC regarding his case, NVC has yet to provide any meaningful status update or any information on processing times.  After USCIS approved plaintiff's petition on July 24, 2019, plaintiff sent multiple requests to USCIS and NVC inquiring as to the status of his petition.  Declaration of Yousof Rahimian ("Rahimian Decl.") at 1, ECF No. 9-2.  Then, on December 8, 2020, NVC approved plaintiff's application and

responded to his previous inquiries, informing him that the application had been approved.  Pl.'s Opp'n Defs.' Mot. Dismiss ("Pl.'s Opp'n") at 5, ECF No. 9.  Plaintiff was then informed that his "case status had been moved to the final stage whereby an appointment would be scheduled at the U.S. Embassy in Turkey."  *Id.* at 5.  On April 3 and 7, 2021, plaintiff sent expedite requests to NVC and explained "the strenuous circumstances [plaintiff's] wife was living under." Rahimian Decl. ¶¶ 10–11.  NVC responded on August 3, 2021, informing plaintiff that the embassy in Turkey would not grant plaintiff's wife an interview at that time.  *Id.* ¶ 12.  Plaintiff then requested that the case be transferred to the U.S. embassy in Abu-Dhabi, but the request was denied on September 8, 2021.  *Id.* ¶ 12–13.  Since then, plaintiff contacted NVC three times requesting updates and expedition of his application, but the Turkish embassy has not yet scheduled an interview for plaintiff's wife.  *Id.* ¶¶ 14–17.

As a result, plaintiff and his wife have remained separated for more than five years with no indication as to when the delay in adjudicating the application may be resolved.  Pl.'s Opp'n at 5–6.  This prolonged separation "has caused significant personal and emotional hardship" for the couple.  Am. Compl. ¶ 1.  In plaintiff's words, "[i]n Muslim culture, once a woman is married, she is supposed to leave her parents and move in with her husband."  *Id.*  Plaintiff's wife "moved out in November 2021," and she "has been living alone in Turkey without support, waiting for the visa application to be issued."  *Id.*  This delay has also placed significant financial strain on plaintiff, has delayed his wife's pursuit of her Ph.D., and has derailed plaintiff and his wife's plan to start a family.  *Id.*

**C.      Procedural Background**

On March 23, 2022, plaintiff filed this case "to compel the [d]efendants to take action on and adjudicate his wife's [] visa application."   Am. Compl. ¶ 1.[2]  Plaintiff alleges that "[d]efendants owe a non-discretionary duty to adjudicate this immigration case," which duty he seeks to enforce with relief under the APA and the Mandamus Act.  *Id.* ¶ 2.  Plaintiff also claims that defendants have unlawfully delayed his wife's visa application, pursuant to the Controlled Application Review and Resolution Program ("CARRP"), a Department of Homeland Security program "which intentionally delays the applications of Muslims or those from predominantly-Muslim countries due to perceived security concerns."  *Id.* ¶ 5.

Defendants thereafter moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Defs.' Mot. at 1.  Specifically, defendants argue that the federal officials named as defendants "cannot provide the relief requested" because "either they have no role in adjudicating the request for a visa or they completed their role in the process." *Id.* at 6.  Alternatively, defendants contend that "the delay in adjudication of plaintiff's visa application by the State Department is not unreasonable," *id.* at 7, and so plaintiff "fails to state a claim upon which relief can be granted," *id.* at 5; FED. R. CIV. P. 12(b)(6).  Defendants' motion is now ripe for review.

## II.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction," *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)), and "have only the power that is authorized by Article III of the Constitution and the statutes enacted

---

[2]      Plaintiff filed an initial complaint on March 22, 2022, *see* Complaint, ECF No. 1, then amended the complaint the next day, pursuant to Federal Rule of Civil Procedure 15(a)(1), *see* Am. Compl. ECF No. 2.  All references herein are therefore to the Amended Complaint.

by Congress pursuant thereto," *Johnson v. Comm'n on Presidential Debates*, 869 F.3d 976, 980 (D.C. Cir. 2017) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)).  To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff thus "bears the burden of invoking the court's subject matter jurisdiction."  *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).

When a jurisdictional argument "present[s] a dispute over the factual basis of the court's subject matter jurisdiction, . . . the court must go beyond the pleadings and resolve" any dispute necessary to the disposition of the motion to dismiss.  *Feldman v. FDIC*, 879 F.3d 347, 351 (D.C. Cir. 2018) (alteration in original) (quoting *Phoenix Consulting v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000)).  The court must accept as true "material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'"  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).  In addition, however, the "court may properly consider . . . evidentiary material in the record," again affording the plaintiff "the benefit of all reasonable inferences."  *Feldman*, 879 F.3d at 351.

B.   **Federal Rule of Civil Procedure 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wood v. Moss*, 572 U.S. 744, 757–58 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A facially plausible claim pleads facts that are not "'merely consistent with' a defendant's liability" but that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)); *see also Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir.

7

2012).  In deciding a motion under Rule 12(b)(6), the court must consider the whole complaint, accepting all factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555. Courts do not, however, "assume the truth of legal conclusions . . . nor . . . accept inferences that are unsupported by the facts set out in the complaint." *Arpaio*, 797 F.3d at 19 (internal citation omitted).  "In determining whether a complaint fails to state a claim," a court "may consider only the facts alleged in the complaint, any documents either attached to or *incorporated* in the complaint and matters of which [courts] may take judicial notice." *Trudeau v. FTC*, 456 F.3d 178, 183 (D.C. Cir. 2006) (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997)).

## III.     DISCUSSION

Defendants provide three reasons for dismissal under Rule 12(b)(1) and (6): first, the federal officials plaintiff names cannot grant the relief he seeks, Defs.' Mot. at 6–7; second, plaintiff fails to state a claim of unreasonable delay in the adjudication of his visa application under the APA and Mandamus Act, *id.* at 7–17; and, finally, plaintiff's CARRP claims are conclusory and lack any kind of factual basis, *id.* at 17–18.[3]  For the reasons explained below, defendants' motion to dismiss is granted on all three grounds.  Before addressing the merits, defendant's threshold jurisdictional issue must be addressed.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause." (internal citation omitted)).

### A.     Plaintiff's Claims Against Certain Federal Officials Are Moot

---

[3]     In this case, omission of an index of the administrative record is proper because the index requirement applies to agency action, rather than the agency inaction challenged here.  Consequently, the agency administrative record is not necessary for resolution of the pending motion.  *Connecticut v. U.S. Dep't of Interior*, 344 F. Supp. 3d 279, 294 (D.D.C. 2018).

Defendants contend that claims asserted against officials from the Department of Homeland Security and its component, USCIS, should be dismissed under Rule 12(b)(1) because those officials have completed their role with respect to plaintiff's visa application and therefore cannot provide the relief plaintiff seeks.  *Id.* at 6–7.

"Article III of the Constitution limits federal-court jurisdiction to 'cases' and 'controversies.'"  *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160 (2016) (quoting U.S. CONST. art. III, § 2).  The Supreme Court has interpreted this requirement to "demand that 'an actual controversy . . . be extant at all stages of review, not merely at the time the complaint is filed.'"  *Id.* (omission in original) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997)).  "[A] case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."  *Porzecanski v. Azar*, 943 F.3d 472, 479 (D.C. Cir. 2019) (quoting *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013)); *see also United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1537 (2018) (requiring the resolution of a dispute to "have direct consequences on the parties involved" (quoting *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013))).  The initial "heavy" burden of establishing mootness lies with the party asserting a case is moot, *see Motor & Equip. Mfrs. Ass'n v. Nichols*, 142 F.3d 449, 459 (D.C. Cir. 1998), but the opposing party bears the burden of showing an exception applies, *see S. Co. Servs., Inc. v. FERC*, 416 F.3d 39, 43 (D.C. Cir. 2005).  "A case that becomes moot at any point during the proceedings is 'no longer a "Case" or "Controversy" for purposes of Article III,' and is outside the jurisdiction of the federal courts."  *Sanchez-Gomez*, 138 S. Ct. at 1537 (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)).

Plaintiff's claims against officials from the Department of Homeland Security and USCIS are moot.  When plaintiff filed his complaint, USCIS, a component of the Department of

Homeland Security, had already approved plaintiff's visa petition and forwarded it to NVC for further processing.  Am. Compl. ¶¶ 1, 14; *see also* Pl.'s Opp'n at 5.  Accordingly, the Department of Homeland Security's and USCIS' roles in processing the visa application are complete.  For the application process to proceed, the State Department must schedule a consular interview, after which a consular officer will issue or refuse the visa.  22 C.F.R. §§ 42.62, 42.81.

Plaintiff has not alleged facts to support the claim that officials from the Department of Homeland Security or USCIS have continued involvement in processing the application for plaintiff's wife beyond NVC's handling of the case.[4]  Likewise, plaintiff's claim that "sometimes an immigration case may be sent back to the USCIS," Pl.'s Opp'n at 10, stops short of alleging that such transfer occurred in his case, let alone cites any factual basis for this argument.  In the absence of such supporting facts, plaintiff has not adequately alleged that an "'actual and concrete dispute' exists between the parties."  *Mahmood v. U.S. Dep't of Homeland Sec.*, No. 21-cv-1262 (RC), 2021 WL 5998385, at *4 (D.D.C. Dec. 20, 2021) (dismissing similar claims asserted against officials from the Department of Homeland Security and USCIS for failure to allege sufficient facts showing that either agency was still involved in plaintiff's visa processing (citing *Sanchez-Gomez*, 138 S. Ct. at 1537)); *Brzezinski v. U.S. Dep't of Homeland Sec.*, No. 21-cv-376 (RC), 2021 WL 4191958, at *3 (D.D.C. Sept. 15, 2021) (same).  Accordingly, plaintiff's

---

[4]      More specifically, plaintiff contends that "[g]overnment [d]efendants work together and frequently transfer cases back and forth," and "sometimes an immigration case may be sent back to the USCIS."  Pl.'s Opp'n at 10. Plaintiff further argues that "[b]ecause these [g]overnment entities frequently transfer cases back and forth, and they work together, calling a case moot against one agency because it's temporarily in the possession of another would frustrate any attempt at litigation."  *Id.*  This argument is similarly unpersuasive.  Even if plaintiff is correct that there could be a potential transfer of his case between agencies, nothing in the record suggests that such a transfer is occurring or would occur in this case.  This assertion is far too speculative to avoid the finding that plaintiff's claim against the Department of Homeland Security and USCIS are moot.

claims against officials from the Department of Homeland Security and USCIS must be dismissed as moot.[5]

**B.     The Alleged Delay in Decision on Plaintiff's Application Is Not Unreasonable, Requiring Dismissal of Claims for Failure to State a Claim**

Plaintiff next argues that the delay in visa adjudication is unreasonable, and therefore, a violation of the APA and the Mandamus Act. Am. Compl. ¶¶ 14–34. Defendants counter that plaintiff's claim must fail, as a matter of law, because the forty-one-month delay at issue in this case is not unreasonable. Defs.' Mot. at 7–17.[6]

The APA requires agencies to "proceed to conclude a matter presented to [them]" in a "reasonable time," 5 U.S.C. § 555(b), and authorizes reviewing courts to "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1). In determining whether a delay in agency action is unreasonable, the D.C. Circuit has enumerated six factors for consideration:

> (1) [T]he time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the

---

[5]      For similar reasons, officials from the Department of Justice and the Federal Bureau of Investigation ("FBI") are dismissed as parties to this case. Plaintiff claims that these defendants "together [] are responsible for adjudicating visa petitions, implementing the Immigration and Nationality Act ('INA'), and ensuring compliance with all applicable federal laws, including the APA." Am. Compl. ¶ 9; *accord id.* ¶ 10. Plaintiff, however, does not state facts to show how officials from the Department of Justice and FBI have any involvement in the remaining steps of plaintiff's visa processing. As with plaintiff's claims against the Department of Homeland Security and USCIS officials, claims against Department of Justice and FBI officials may be dismissed as moot. *See Sanchez-Gomez*, 138 S. Ct. at 1537. Alternatively, plaintiff's claim may be dismissed under Rule 12(b)(6) for failure to state a claim because plaintiff has not alleged sufficient facts to show that officials from the Department of Justice or FBI had any hand in causing the complained-of delay in the processing of the visa application. *See Iqbal*, 556 U.S. at 678 ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." (quoting *Twombly*, 550 U.S. at 555)).

[6]      The last government action in this matter occurred in July 2019. Am. Compl. ¶ 14.

> court need not find any impropriety lurking behind agency lassitude
> in order to hold that agency action is unreasonably delayed.

*Telecomms. Rsch. & Action Ctr. v. FCC ("TRAC")*, 750 F.2d 70, 80 (D.C. Cir. 1984) (internal

citations omitted and formatting modified).  This standard applies to claims of unreasonable

delay under both the Mandamus Act and the APA.  *See Norton v. S. Utah Wilderness All.*, 542

U.S. 55, 63–64 (2004); *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016).  In

analyzing and balancing the *TRAC* factors as applied in this case, the agency delay in

adjudicating plaintiff's visa application is not unreasonable.

### 1. *TRAC* Factors 1 & 2

The first *TRAC* factor is the most important, *In re Core Commc'ns Inc.*, 531 F.3d 859,

855 (D.C. Cir. 2008), and is "typically considered together" with the second *TRAC* factor,

*Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020).  Both these factors weigh in

defendants' favor.

As defendants correctly point out, "Congress has established no firm timetable for

processing the visa request at issue here," Defs.' Mot. at 9; *see also Mahmood*, 2021 WL

5998385, at *7 (finding the same).  Instead, Congress has given "agencies wide discretion in the

area of immigration processing."  *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017)

(finding that a two-year delay in processing a visa application "does not typically require judicial

intervention").  Looking to "supply content for th[e] rule of reason," *TRAC*, 750 F.2d at 80,

plaintiff points to 8 U.S.C. § 1571(b), the preamble to legislation providing for the institution of

measures to reduce the backlog in processing of immigration benefits by the now-defunct

Immigration and Naturalization Service, which states "[i]t is the sense of Congress that the

processing of any immigration benefit application should be completed not later than 180 days

after the initial filing of the application," Pl.'s Opp'n at 13 (quoting 8 U.S.C. § 1571(b)).

Plaintiff argues that this language proves Congress's intent to set a six-month timetable for the State Department's processing of applications. *Id*.

This Court has previously found Section 1571(b) to add some weight in a plaintiff's favor for the second *TRAC* factor. *See Nibber v. U.S. Citizenship and Immigr. Servs.*, No. 20-cv-3207 (BAH), 2020 WL 7360215, at *6 & n.5 (D.D.C. Dec. 15, 2020) (collecting cases finding 8 U.S.C. § 1571(b) relevant to the *TRAC* analysis in cases involving unreasonable delay by USCIS in adjudicating immigration benefit applications). Yet, as defendants note, plaintiff has failed to identify any authority holding that the preamble applies to the State Department's scheduling of visa application interviews. Defs.' Reply Supp. Mot. Dismiss ("Defs.' Reply") at 3–4, ECF No. 10. In fact, several cases suggest otherwise. *See Logan v. Blinken*, No. 21-cv-2275 (FYP), 2022 WL 3715798, at *5 (D.D.C. Aug. 29, 2022) ("[T]he language of 8 U.S.C. § 1571(b) 'is best interpreted as non-binding . . . [a]nd [that] a contrary holding would ignore the overwhelming caselaw rejecting unreasonable delay challenges for applications that remained pending well beyond the 180-day window that Congress contemplated in 8 U.S.C. § 1571.'" (quoting *Mohammad v. Blinken*, 548 F. Supp. 3d 159, 167 (D.D.C. 2021)) (internal citation omitted)); *Murway v. Blinken*, No. 21-cv-1618 (RJL), 2022 WL 493082, at *2 n.2 (D.D.C. Feb. 16, 2022) (rejecting the argument that 8 U.S.C. § 1571(b) applies to visa cases alleging unreasonable delay in processing by consular officials at the State Department); *El Centro Reg'l Med. Ctr. v. Blinken*, No. 21-cv-361 (DMS), 2021 WL 3141205, at *4 & n.2 (S.D. Cal. July 26, 2021) ("[T]he plain text of § 1571 indicates that it applies to the processing of immigrant benefit applications by USCIS, not consular officials at the State Department."). Accordingly, Section 1571(b) does not salvage plaintiff's claim.

"Absent a congressionally supplied yardstick, courts typically turn to case law as a guide." *Sarlak v. Pompeo*, No. 20-cv-35 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020); *see Skalka*, 246 F. Supp. 3d at 154 (collecting cases).  No bright lines exist in this context, but "[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Sarlak*, 2020 WL 3082018, at *6 (quoting *Yavari v. Pompeo*, No. 19-cv-02524 (SVW), 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019)); *see also Skalka*, 246 F. Supp. 3d at 154 (concluding based on "comparable cases" that "a delay of [two years] does not typically require judicial intervention"); *Arab v. Blinken*, No. 21-cv-1852 (BAH), 2022 WL 1184551, at *8 (D.D.C. Apr. 21, 2022) (ruling that a thirty-month delay was not unreasonable).  Plaintiff cites no persuasive authority holding otherwise.  Furthermore, a court in this District deemed a similar delay of forty-two months "insufficient to warrant emergency relief in this district" under the first and second *TRAC* factors.  *See Zaman v. U.S. Dep't of Homeland Sec.*, No. 19-cv-3592 (ABJ), 2021 WL 5356284, at *6 (D.D.C. Nov. 16, 2021).  Accordingly, the forty-one-month delay in this case is not long enough to tilt the first two *TRAC* factors in favor of plaintiff.

Of course, whether a "rule of reason" exists for agency action "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003).  Defendants explain that "the operational impacts of COVID-19 have delayed scheduling" the consular interview required to adjudicate plaintiff's visa application.  Defs.' Mot. at 3; *accord id.* at 10.  In March 2020, eight months after USCIS approved plaintiff's petition and

forwarded the application to NVC, U.S. embassies and consulates worldwide shut down due to the COVID-19 pandemic.  Although the State Department authorized a phased resumption of visa services in July 2020, it gave broad discretion to embassies and consulates to determine how to prioritize visa appointments as safely as possible in all visa categories.  The temporary suspension and limited resumption of services has resulted in a substantial backlog at the U.S. Embassy in Turkey.  *Id.* at 3.  Given this backlog and ongoing public health considerations impacting consular staff operations, the first two *TRAC* factors weigh decisively in defendants' favor.  *See Murway*, 2022 WL 493082, at *3 (finding that "operational delays due to the COVID-19 pandemic favor the Government on the first two [*TRAC*] factors"); *Zaman*, 2021 WL 5356284, at *6 (same); *Khan v. Blinken*, No. 21-cv-1683 (JEB), 2021 WL 5356267, at *3 (D.D.C. Nov. 17, 2021) (same); *see also Tate v. Pompeo*, 513 F. Supp. 3d 132, 150–51 (D.D.C. 2021) (finding that the government's determination of "how to allocate scarce resources in a global pandemic outweigh[s] [visa applicants'] interests in immediate adjudication of their visas").

### 2.  *TRAC* Factors 3 & 5

The third and fifth *TRAC* factors consider whether "human health and welfare are at stake" and the "nature and extent of the interests prejudiced by delay."  *TRAC*, 750 F.2d at 80. In this case, these factors weigh in plaintiff's favor.

The delay in processing plaintiff's visa petition has exacerbated the five-year separation endured by plaintiff and his wife, which has put a strain on the couple financially and emotionally, delayed his wife's education, and prevented the couple from being able to start a family.  Pl.'s Opp'n at 5.  The impact of the delay risks the health and welfare of plaintiff and his wife.  *See Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020) (finding the third and

15

fifth *TRAC* factors to weigh in plaintiff's favor in light of the prolonged separation of spouses); *see also Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 95 (D.D.C. 2020) (finding the third and fifth *TRAC* factors to weigh in plaintiff's favor in light of the prolonged separation of an engaged couple); *Tate*, 513 F. Supp. 3d at 150 (finding the third and fifth *TRAC* factors to weigh in plaintiffs' favor in light of the separation of friends, family, and loved ones). Defendants do not contradict that finding, but instead offer that the visa interview of plaintiff's wife "has been delayed further due to measures necessary to prevent the spread of COVID-19 and protect the safety of U.S. officials—and visa applicants—abroad." Defs.' Mot. at 15–16. That point is valid and understood, but the nature of plaintiff's interests and prejudice to those interests from delay in processing the visa still weigh in his favor.[7]

### 3.   *TRAC* Factor 4

The fourth *TRAC* factor requires the court to "consider the effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. The D.C. Circuit affords the fourth *TRAC* factor great weight, *see Mashpee Wampanoag Tribal Council, Inc.*, 336 F.3d at 1100, and this factor conclusively favors defendants' position here.

As discussed above, defendants face an extraordinary backlog of visas not only in the embassy in Turkey but around the world. Accordingly, deference must be given to the State Department's priority-setting and resource-allocation decisions. *See Milligan*, 502 F. Supp. 3d at 319 ("[D]elays stemming from resource-allocation decisions simply do not lend themselves to 'judicial "reordering[s] [of] agency priorities."'" (alterations in original) (quoting *Bagherian*, 442 F. Supp. 3d at 96); *Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 117 (D.D.C. 2005) ("[W]here resource allocation is the source of the delay, courts have declined to expedite action

---

[7]   Relevant to *TRAC* factors 3 and 5, defendants add that plaintiff simply advocates for jumping the line ahead of other visa applicants. Defs.' Mot. at 15. That point is better considered under the *TRAC* factor four analysis.

because of the impact on competing priorities."); *Tate*, 513 F. Supp. 3d at 149 ("Relief that would simply 'reorder' a queue of applicants seeking adjudication is generally viewed as inappropriate when 'no net gain' in such adjudications is achieved." (quoting *In re Barr Labs., Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991))); *see also, e.g.*, *Am. Hosp. Ass'n*, 812 F.3d at 192 (collecting cases that "rejected mandamus claims that would have had the effect of allowing the plaintiffs to jump the line, functionally solving their delay problem at the expense of other similarly situated applicants").

Plaintiff responds with non-binding, out-of-circuit opinions holding "that there is insufficient evidence in the record as to the existence of a queue, the plaintiff's place in the queue, or procedures for determining the order of adjudications," and, even if such a queue existed, he and his family "should not be penalized for a lack of agency resources," Pl.'s Opp'n at 14.  First, the State Department website describes the backlog of immigrant visa applications worldwide and the 377,953 applicant interviews still pending scheduling after all December 2022 interview slots were taken.  *See National Visa Center (NWC) Immigrant Visa Backlog Report*, U.S. DEP'T OF STATE, https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/visas-backlog.html (last visited Jan. 10, 2023).  Plaintiff's application is among those many thousands.  Second, despite the significant burdens the pandemic and defendants' necessary responses impose on blameless applicants, D.C. Circuit precedent recognizes "no basis for reordering agency priorities" when an "agency is in a unique—and authoritative—position to . . . allocate its resources in the optimal way."  *In re Barr Labs*, 930 F.2d at 76.  As a result, the fourth factor weighs in defendants' favor.

### 4.    *TRAC* Factor 6

Finally, *TRAC* factor six states that "the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is "unreasonably delayed."'"  *TRAC*, 750 F.2d at 80.  Here, plaintiff does not allege that the agencies involved in the adjudication process have acted improperly, *see* Pl.'s Opp'n at 18 ("[W]hether an agency's impropriety contributed to the delay[, that] helps a plaintiff if bad faith is present, but its absence does not impair an otherwise strong claim."), nor could he because the government's good faith efforts to address processing delays caused by the pandemic weigh against relief.  *See Tate*, 513 F. Supp. 3d at 150 (holding the same citing *Liberty Fund, Inc.*, 394 F. Supp. 2d at 119–20)).  Plaintiff is understandably frustrated that defendants' lack of resources and response to the pandemic has unfairly resulted in profound hardship for him and his wife, but that does not cure the pleading deficiency in his complaint.

### 5. *TRAC* Factors Considered in Totality

Considering all six *TRAC* factors, plaintiff has not stated a claim under the APA or the Mandamus Act for unreasonable delay.  *Murway*, 2022 WL 493082, *5 (reaching the same conclusion); *Logan*, 2022 WL 3715798, at *7 (same); *Arab*, 2022 WL 1184551, at *10 (same); *Zaman*, 2021 WL 5356284, at *6–8 (same); *Mahmood*, 2021 WL 5998385, at *9 (same); *Milligan*, 502 F. Supp. 3d at 320 (same).  Although *TRAC* factors three and five lean in plaintiff's favor, after evaluating the factors holistically, the delay is not unreasonable in light of the COVID-19 pandemic.  The Court deeply sympathizes with plaintiff's hardship and the effect it has had on his family.  Unfortunately, many other families are in similar, difficult circumstances and defendants face challenges in determining how best to deploy scarce resources during an unprecedented global pandemic.  Taking the factors as a whole, the rule of reason found in the caselaw coupled with "the government's interests in balancing its own

priorities" outweighs the real hardship this delay has caused plaintiff and his wife.  *Milligan*, 502

F. Supp. 3d at 320 (quoting *Bagherian*, 442 F. Supp. 3d at 95–96); *see, e.g.*, *Am. Hosp. Ass'n*,

812 F.3d at 192 (collecting cases "reject[ing] mandamus claims that would have had the effect of

allowing the plaintiffs to jump the line, functionally solving their delay problem at the expense of

other similarly situated applicants").  The State Department delay does not warrant judicial

intervention at this juncture, but as circumstances surrounding the pandemic change, the Court's

consideration of these factors might also change in the face of continued, extended delays.  *See,*

*e.g.*, Scott Pelley, *President Joe Biden: The 2022 60 Minutes Interview*, CBS News, Sept. 18,

2022, https://www.cbsnews.com/news/president-joe-biden-60-minutes-interview-transcript-

2022-09-18/ (President Biden: "The pandemic is over.  We still have a problem with COVID.

We're still doing a lotta work on it.  It's-- but the pandemic is over.  [I]f you notice, no one's

wearing masks.  Everybody seems to be in pretty good shape.  And so I think it's changing.").

### C.      Plaintiff Fails to State a Claim of Intentional Delay Based on CARRP

Plaintiff claims that "[d]efendants are intentionally delaying this visa application because

of an application of the CARRP program."  Am. Compl. ¶ 39.  According to plaintiff, the

Department of Homeland Security uses CARRP "far more expansive[ly] than the security-

related ineligibility criteria for immigration applications set forth by Congress in the INA" by

using "deeply flawed and expansive government watchlists, and other vague and overbroad

criteria."  *Id.* ¶ 38.  Given that plaintiff's wife is from a predominantly Muslim country, plaintiff

alleges that the unlawful application of CARRP brands "innocent, law-abiding residents, like

[p]laintiff and his wife as 'national security concerns' on account of innocuous activity and

associations, and characteristics such as national origin."  *Id.*  Defendants counter that plaintiff's

CARRP claim is "untenable" because "he offers nothing more than speculation that CARRP has

played any role in the [d]elay" of his visa application.  Defs.' Mot. at 17.  At the outset, officials

from the Department of Homeland Security and USCIS are dismissed from this action, *see supra*

Section III.A, and so their alleged unlawful application of CARRP is of no consequence here.

Even assuming, however, that the State Department utilizes CARRP in coordinating with the

Department of Homeland Security, as plaintiff alleges, *see* Am. Compl. ¶¶ 35–37, defendants are

correct that the CARRP claim fails.

      Plaintiff's CARRP claim fails to provide sufficient factual support and instead relies "on

information and belief" that "[d]efendants are intentionally delaying this visa application because

of an application of the CARRP program."  *Id*. ¶ 39.  Courts "do not assume the truth of legal

conclusions, . . . nor do [they] 'accept inferences that are unsupported by the facts set out in the

complaint.'"  *Arpaio*, 797 F.3d at 19 (internal citation omitted) (quoting *Islamic Am. Relief

Agency (IARA-USA) v. Gonzales*, 477 F.3d 728, 732 (2007)).  Given the absence of any factual

predicate, defendants' motion to dismiss the CARRP claim is granted.  *See Ghadami v. U.S.

Dep't of Homeland Sec.*, No. 19-cv-397 (ABJ), 2020 WL 1308376, at *6 (D.D.C. Mar. 19, 2020)

(dismissing a similar claim because plaintiffs failed to "set forth any factual allegations to

support" the conclusion that defendants intentionally delayed plaintiff's vis application pursuant

to CARRP); *Mahmood*, 2021 WL 5998385, at *6 (same); *Al-Saadoon v. Barr*, 973 F.3d 794, 804

(8th Cir. 2020) (affirming a dismissal of CARRP claims on the same ground).[8]

---

[8]    Indeed, CARRP is a USCIS policy, and USCIS has completed its role in processing the application.
Moreover, as several other courts have found, publicly available documents released by USCIS state that CARRP
does not apply to I-130 petitions.  *See Mahmood*, 2021 WL 5998385, at *5–6 & n.6 (citing U.S. Citizenship and
Immigr. Servs., *Fraud Detection & National Security Controlled Application Review and Resolution Program
(CARRP) Independent Study* 28 (Dec. 28, 2011), https://www.aclusocal.org/sites/default/files/wp-
content/uploads/2013/01/FDNS-CARRP-Independent-Study-Powerpoint-v.-1.1-Dec.-28-2011.pdf); *Ghadami*, 2020
WL 1308376, at *6 (same); *Alshawy v. U.S. Citizenship & Immigr. Servs.*, No. 21-cv-2206 (FYP), 2022 WL
970883, at *4 (D.D.C. Mar. 30, 2022) (same); *see also Abbas v. U.S. Dep't of Homeland Sec.*, 20-cv-03192 (CJN),
2021 WL 3856625, at *2 n.3 (D.D.C. Aug. 29, 2021) (noting that CARRP is not used in the Form I-130 context).
Consequently, plaintiff's unsupported allegations fail to establish that CARRP played or continues to play a role in
any delay in processing the visa application at issue.

**IV.      CONCLUSION**

For the reasons given, defendants' motion to dismiss is granted.  An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date:   January 10, 2023

_____
BERYL A. HOWELL
Chief Judge